[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE MOTIONS FOR PROTECTIVE ORDER AND TO COMPEL
This case involves a motion for a protective order CT Page 1350 concerning the production of certain documents at a deposition. A motion to compel the production of the documents at a future deposition has also been filed. Some discussion of the complaint is necessary. The plaintiff, William Olson, was formerly employed by Accessory Controls Equipment (ACE). In his complaint the plaintiff alleges that he was wrongfully dismissed by ACE as punishment for disclosing ACE's allegedly secret and improper disposal of hazardous waste to ACE's parent corporation.
The former president of ACE, Richard Stern, was deposed on October 8, 1993 and he appeared pursuant to a subpoena duces tecum dated August 30, 1993. Mr. Stern appeared at the deposition but did not produce all of the subpoenaed documents, particularly a request for "all documents concerning, mentioning and/or being communications among ACE, TLD (ACE's parent company), and (Stern) regarding (Stern's) employment with ACE and/or TLD and the termination thereof." ACE had filed an objection to the subpoena dated August 30, 1993. At the deposition Mr. Stern said that he was not represented by counsel but he had turned over the previously mentioned documents to counsel for ACE. Counsel for ACE took the position that the request for the documents referred to had been objected to and he would not produce those documents. Mr. Stern himself had not filed an objection to the request for these documents pursuant to P.B.
ACE has now filed a motion for a protective order barring the production of the documents; the plaintiff moves to compel the production of these documents.
One of the questions presented is whether at the deposition counsel for ACE had the right to rely on ACE's August 30 objection to the requested documents on the grounds that it in effect also represented Mr. Stern at that time and at the deposition Mr. Stern was asked who his attorneys were. Mr. Stern replied Attorney O'Donnell but when pressed said O'Donnell was ACE's attorney and went on to say that personally he had no attorney in the matter. As the fray was joined at the deposition and Mr. Stern was asked another question Mr. Stern said "I'd like to talk to my attorney" referring to counsel for ACE who was present at the deposition. Counsel for the plaintiff interposed that he had no right to speak to ACE's lawyer since he was CT Page 1351 at the deposition only in behalf of ACE. As one could well imagine, the deposition went on from there on not very pleasant terms. It is no doubt true that when a present or past corporate officer is involved in litigation because of his status he can be represented by legal counsel at the corporation's expense. The issue is not whether ACE's counsel could have represented Mr. Stern but whether in fact they did and whether counsel for the plaintiff could have assumed such representation. The question really is one of fair notice. Experienced counsel for ACE, when they made their August 30 objection to the request, should have explicitly indicated they were representing Mr. Stern and filed the objection also on his behalf. Counsel for plaintiff absent such notice could have rightfully expected, as he did here, that Mr. Stern being unrepresented could not refuse to comply with the request since he had not objected pursuant to P.B. 245(d).
But that does not end the matter for the court. It will be assumed for the purposes of discussion that Mr. Stern was unrepresented by counsel. It is evident then that he did not take the proper steps under P.B. 245(d) to object to the request. The court however, is reluctant in the case of unrepresented individuals to formulate an ironclad rule that having failed to comply with the objection procedure that person is forever barred in all circumstances from requesting a protective order. Section 245(f), the enforcement provision, says the court may or may not do certain harsh things if the provisions of P.B. 245 aren't complied with; it speaks in terms of issuing a capias if a person to whom the subpoena is issued has no "just excuse" for failing to comply with a subpoena. Mandatory draconian language is not used that would in all cases immediately trigger an order to compel. From a reading of the deposition the court cannot say Mr. Stern realized ACE's counsel didn't represent him on this matter apart from what ACE's counsel should or should not have done to make that representation explicit to opposing counsel and the court.
Therefore in this case the court prefers to decide this matter on the merits. At the time the plaintiff was fired Richard Stern was president of the defendant ACE Corporation. The plaintiff claims he was fired because he informed ACE's parent corporation that ACE was improperly CT Page 1352 and secretly storing hazardous waste. In the argument on ACE's protective order, plaintiff's counsel argued their position was that Mr. Stern was aware of the improper storage and ordered employees to do illegal acts. Mr. Stern was terminated from his employment after the plaintiff lost his job and as noted the plaintiff now requests documents from ACE and the parent corporation relative to Mr. Stern's employment and termination.
The court will attempt to summarize ACE's and Mr. Stern's objection to the requested discovery in this case. The objection to the production of these documents is not made on the ground of work product or attorney client privilege. The claim is made that compliance with this requested discovery would be burdensome or oppressive; the request does not seek documents material to the plaintiffs termination but documents concerning ACE's past president. The plaintiff only claims these documents "may" lead to the discovery of admissible evidence. If the documents sought were relevant to the plaintiff's claim, they would have been turned over in response to a previous request for production of all documents pertaining to the plaintiff's termination. In fact Mr. Barrick, ACE's current president, has submitted an affidavit in which he states there was no relation between the plaintiff's termination and Mr. Stern's subsequent resignation.
The case of Dzurenda et al v. Jason Burdo, 8 CSR 549 (1993) is cited for the broad proposition that our "rules of discovery clearly place the burden on the moving party to request discovery within the strictures of the rules." Id. at page 550. What counsel for ACE and/or Mr. Stern fail to mention is that Dzurenda involved a motion seeking permission for discovery in addition to that provided in the standard interrogatories and requests for production.
The change in our civil discovery rules was to reflect a new liberal attitude regarding pretrial discovery. Connecticut Practice, Vol. 1, Muller and Horton 217 commentary, page 390-393. "Evidence may be elicited at a discovery deposition even though the information `sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. P.B. 218. Thus the allowable scope of inquiry at a discovery deposition clearly exceeds the CT Page 1353 boundaries of admissible evidence." Sanderson v. Steve Snyder Enterprises Inc., 196 Conn. 134, 139 (1985). Rule 218 explicitly provides discovery "shall be permitted if the disclosure would be assistance in the prosection [prosecution] . . . of the action. . . ."
This court cannot say that the requested documents and information will not be of assistance in the prosecution of this complaint or that they are not reasonably calculated to lead to the discovery of admissible evidence. If this matter proceeds to trial and Mr. Stern is called as a witness the court finds some difficulty in conceiving of an appropriate objection based on the grounds of lack of relevance that would bar counsel for the plaintiff from inquiring into why and under what circumstances he left his position with ACE. If the circumstances of this case invite such a conjecture regarding a trial which may be years away, how can it be said that the present request, calculated to explore the viability of such an area of inquiry, is not appropriate?
Where a party makes an initial showing that specific, identified documents might be material to the preparation of the case or reasonably lead to the discovery of admissible evidence, a request for discovery shouldn't be barred (1) by what might be the self-serving affidavit of a defendant or its officers that the items sought won't produce material information or (2) by a statement of opposing counsel that if the documents in his or her opinion were material they would have been turned over under a more general request for relevant documents.
The grant or denial of discovery can't be put in the hands of an adversary especially in a case where documents are involved which admittedly exist so that their discovery won't authorize a general fishing expedition through an adversary's records. The motion for protective order is denied and Mr. Stern should turn over the indicated documents.
Corradino, J.